# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Judge Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 2258 | **DATE** | March 9, 2011 |
| **CASE TITLE** | FREDERICK J. GREDE, Liquidation Trustee of Sentinel Liquidation Trust v. JACQUES DE SAINT PHALLE and FTN FINANCIAL SECURITIES CORP. | | |

**DOCKET ENTRY TEXT:**

Defendants' Motion to Dismiss the Complaint [38] is denied.

## STATEMENT

The tale of Sentinel's collapse is, by now, well-told. This specific action is one brought by Frederick J. Grede as the Trustee of a Delaware Business Trust set up to liquidate Sentinel post-Chapter 11. Here, he pursues claims assigned to him by certain former customers of Sentinel. The four specific counts are 1) aiding and abetting Sentinel's Breach of Fiduciary Duty; 2) aiding and abetting Charles Mosley's Breach of Fiduciary Duty (Mosely was Sentinel's head trader); 3) unjust enrichment; and 4) negligence. The Trustee sums up his theories of liability as "that Sentinel and Defendants breached duties to customers by misusing funds deposited by customers to finance the purchase of risky and illiquid securities from Defendants." This case is active again following the lifting of a stay I instituted while the legal landscape was formed in a related case. *See Grede v. Bank of New York Mellon*, 598 F.3d 899 (7th Cir. 2010).

I. Objections to the Trustee's Ability to Bring the Claims

Defendants raise two generalized objections to these claims. The first is that the claims assigned by the customers are not "personal" to the customers; rather, they are said to be "general" claims of the Estate and therefore only properly brought in an action on behalf of the whole Estate by the Trustee. The second is that the Trustee lacks "prudential standing" to bring these sorts of claims. With regard to the latter claim, the Seventh Circuit expressly rejected this argument in the related case that prompted the stay here. *See id.*

The first objection fails because its fundamental assumption was also rejected in *Bank of New York*. Defendants begin their analysis by stating: "because a bankruptcy trustee is the only party who can sue to represent the interests of creditors as a class, common claims...are reserved to the trustee to pursue." Defendants rely on three principal cases to make this argument, all of which consider the scope of a

# STATEMENT

Bankruptcy trustee's powers and responsibilities. *See Levey v. Sys. Div., Inc. (In re Teknek, LLC)*, 563 F.3d 639, 646-47 (7th Cir. 2009); *Fisher v. Apostolou*, 155 F.3d 876, 879 (7th Cir. 1998); *Koch Refining v. Farmers Union Cent. Ex.*, 831 F.2d 1339, 1342-43 (7th Cir. 1987). But in *Bank of New York* the court emphasized that a liquidation trust is no longer governed by the Bankruptcy Code. *Bank of New York*, 598 F.3d at 902. The analyses in *In re Teknek*, *Fisher*, and *Koch Refining* are each founded on the policy undergirding the Code, and are therefore inapplicable to Plaintiff as Trustee of a Delaware business trust.

*In re Teknek*, *Fisher*, and *Koch Refining* were all cited in Defendants' briefs from before the stay and, hence, before the Seventh Circuit's opinion in *Bank of New York*. But they have refreshed the argument by offering supplemental authority. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010); *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 2011 WL 439532 (Bankr. S.D.N.Y. Feb. 9, 2011); *In re Landmark Fence Co., Inc.*, 2010 WL 4924739 (C.D. Cal. Dec. 3, 2010). The cases do not advance the argument, as they all rest on the law and underlying policy of the Bankruptcy code as well. *Landmark* was explicitly a Bankruptcy case, while the *Madoff* matters concerned a liquidation under the Securities Investor Protection Act, 15 U.S.C. § 78fff-1(a), (b) ("SIPA"). SIPA Trustees have "the general powers and duties of a bankruptcy trustee," so that law and policy is implicated by those cases as well.

Importantly, none of the cases imply that the plaintiffs asserting "general" claims simply did not have those claims. Rather, under the Code, it was the Trustee who was statutorily empowered to bring them. As the court in the later *Madoff* case explained "[a] trustee's exclusive ability to bring causes of action that generally affect all creditors fosters the goals of the automatic stay by promoting orderly resolution of claims and preventing single creditors from achieving preferential recoveries." *Madoff*, 2011 WL 439532 at *38. This is Bankruptcy law and policy, and the Seventh Circuit has duly reminded us that a business trust is not governed by the Code. *Bank of New York*, 598 F.3d at 902.

## II. Substantive Objections

In addition to the generalized challenges to the Trustee's complaint, Defendants have made challenges to specific aspects of the substantive counts.

### Causation

Defendants rely on *Holmes v. SIPC*, 503 U.S. 258 (1992) to show that the Trustee failed to allege causation. But *Holmes* stands apart from this case for three important reasons. First, it is a summary judgment appeal and so the implications for a case at the dismissal stage are not entirely clear. *See id.* at 264. Second, the Court was analyzing causation under RICO. *Id.* Third, the plaintiffs were customers of a collapsed broker dealer who had specifically *not* bought the alleged tainted securities at the heart of the case. The theory of causation in that case was simply that the scheme collapsed the broker-dealer, and that therefore there was no money for the plaintiffs to recoup on the securities they had purchased. *Id.* at 261.

The Trustee here has alleged that the Assigning Customers' funds were directly used to buy the inappropriate investments. For purposes of pleading (as opposed to summary judgment, as in *Holmes*), this is enough.

### Duty

Plaintiff has adequately alleged duty for purposes of common law negligence. Many of the cases Defendant cites concern fiduciary duties, not general duties of care. *See, e.g., Congregation of the Passion, Holy Cross Province v. Kidder Peabody & Co.* 800 F.2d 177, 182 (7th Cir. 1986). Others concern factual

circumstances where the issue is the duty to investigate investment suitability. *See, e.g., Cumis Ins. Soc'y v. E.F. Hutton & Co.*, 457 F. Supp. 1380, 1390 (S.D.N.Y. 1978). Here, the allegations are that Defendants in fact "knew" that the investments were unsuitable. Actual knowledge alters the foreseeability of harm, a key determiner of duty. *See Bajwa v. Metro. Life Ins. Co.*, 804 N.E.2d 519, 530 (Ill. 2004) (quotation omitted).

*Moorman*'s Economic Loss Doctrine

Defendants assert that the economic loss doctrine, which is in force in Illinois, bars recovery on a negligence theory. *See Moorman Manufacturing Co. v. National Tank Co.*, 435 N.E.2d 443 (Ill. 1982). The doctrine states that for relationships where the duties are defined by contract, there can be no recovery in tort when losses are purely economic as they are here. *Id.* There is an exception to the doctrine when a good or service provides "pure information." *See Tolan & Sons v. KLLM Architects*, 719 N.E.2d 288 (Ill. App. Ct. 1999). The Trustee maintains that this applies, and Defendants counter that it only applies where misrepresentations are alleged, and none are alleged here. But the rule does not appear so narrow. In *Tolan*, the Illinois Appellate Court noted that to avoid *Moorman*, Plaintiff must demonstrate that the defendant "provided information that constitutes a misrepresentation." *Id.* at 296. The allegations here are that the Defendants made questionable recommendations regarding certain investments. Application of *Moorman* is a "precise, case-specific inquiry," so as the facts develop it may come to pass that the recommendations appear to rise to a level of "constitut[ing]" a misrepresentation. *Moorman* may yet apply, but on the facts alleged it is inappropriate to dismiss the negligence claim outright at this stage.

New York's Martin Act

As I explained in a prior opinion, the defense that New York's Martin Act exempts these actions would call into play materials that are not presented on the face of the complaint, as an exhibit, or provided by the defense and expressly mentioned in the complaint. *See Help at Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 752-53 (7th Cir. 2001); *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006).

Unjust Enrichment

Unjust enrichment is adequately pled. To state a cause of action for unjust enrichment in Illinois a plaintiff must allege that the defendant has retained a benefit, to the detriment of the plaintiff, and that the retention "violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). Defendants are right that some Illinois appellate courts have held that unjust enrichment requires allegations of underlying "unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence," *see, e.g., Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 2009) (quoting *Charles Hester Enterprises, Inc. v. Illinois Founders Ins. Co.* 484 N.E.2d 349, 354 (Ill. App. Ct. 1985)). But others have held that this is not so. *See, e.g., Firemen's Annuity and Benefit Fund v. Municipal Employees' Officers' and Officials' Annuity and Benefit Fund*, which states that "a cause of action based upon unjust enrichment does not require fault or illegality on the part of the defendant." 579 N.E.2d 1003, 1007 (Ill. App. Ct. 1991).

It is true that no recovery is available under an unjust enrichment theory when an express contract governs the relationship between the parties, *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992), but there is no contract alleged between the Plaintiff customers and Defendants. Any express contracts appear to be between Plaintiffs and Sentinel or Sentinel and Defendants, so the contract exception is inapplicable and the unjust enrichment theory survives dismissal.