# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FREDERICK J. GREDE, as Liquidation Trustee of the Sentinel Liquidation Trust, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 08CV6587 |
| STEPHEN M. FOLAN, et al., | ) ) | Judge James B. Zagel |
| Defendants. | ) ) ) | |

| | | |
|---|---|---|
| FREDERICK J. GREDE, as Liquidation Trustee of the Sentinel Liquidation Trust, Assignee of Certain Claims, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 09CV2258 |
| v. | ) ) ) | Judge James B. Zagel |
| FTN FINANCIAL SECURITIES CORP., et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BRIEFING SCHEDULE

Defendants FTN Financial Securities Corp., First Tennessee Bank, N.A. (together, "FTN"), Stephen Folan and Jacques de St. Phalle respectfully request that the Court set a briefing schedule for summary judgment motions with respect to all causes of action asserted by Plaintiff Frederick J. Grede ("the Trustee") in *Grede v. Folan*, Case No. 08CV6587 (the "Estate Action") and *Grede v. FTN Financial Securities Corp.*, Case No. 09CV2258 (the "Customer Action"). In support of this motion, Defendants respectfully submit:

1. The discovery taken to date confirms that the Trustee will be unable to establish necessary elements for every cause of action asserted in both the Estate and Customer Actions.[1]

2. Several claims in the Estate Action present particularly low-hanging fruit.

   - The Trustee asserts a claim for Avoidance and Recovery of Fraudulent Transfers Pursuant to §§ 548(a)(1)(A) and 550(a) of the Bankruptcy Code. *See* Estate Action, First Am. Compl., Count Twelve. To prevail, he must establish that Sentinel engaged in securities transactions with FTN "with actual intent to hinder, delay, or defraud" its creditors. 11 U.S.C. § 548(a)(1)(A). But in the *Bank of New York* litigation, the Court has already found that Sentinel's investment scheme was not intended to strip creditors of assets. *See Grede v. The Bank of New York Mellon*, Case No. 08cv02582, Dkt. #352, at 27. Because the Trustee relies on precisely the same evidence of Sentinel's intent here as he did in the *Bank of New York* case,[2] the collateral estoppel doctrine precludes him from re-litigating that claim. *See Universal Guar. Life Ins. Co. v. Coughlin*, 481 F.3d 458, 462 (7th Cir. 2007).

---

[1] On June 9, 2011, counsel for the Trustee (Jeffrey Eberhard of Jenner & Block) informed counsel for Defendants (Jeannie Rhee of WilmerHale) that the Trustee will amend his complaints to eliminate the following claims: (1) Estate Action: Count One (Aiding and Abetting Breach of Fiduciary Duty), Count Seven (Negligent Misrepresentation), Count Nine (Consumer Fraud, 815 Ill. Comp. Stat. § 505/1), and Count Ten (Negligence); and (2) Customer Action: Count Four (Negligence). This motion does not address Defendants' grounds for summary judgment relating to those claims. Defendants respectfully reserve the right to seek summary judgment on those claims if the Trustee does not amend his complaints as described above.

[2] *See* Trustee's Objections and Resp. to Def. Folan's First Set of Interrogs. at 21, Resp. No. 14 ("[T]he facts supporting Sentinel's intent to hinder, delay, or defraud creditors, which is an element of the Trustee's fraudulent transfer claim in this case, are set forth in the reports and supporting material of James Feltman in the case captioned *Grede v. The Bank of New York, et al*, Case No. 08 C 2582….").

- The Trustee asserts two claims based upon Sentinel's purchase in May 2007 of trust preferred securities issued by HomeBanc Corp. *See* Estate Action, First Am. Compl., Counts Five (Securities Fraud) & Six (Illinois Blue Sky law). His theory is that Defendants wrongly led Charles Mosley, Sentinel's head trader, to believe that HomeBanc had all prime mortgages except 1%, when "in truth more than half … were in fact higher risk, non-prime loans, known as 'Alt-A' loans." *Id.* ¶ 136. Defendants will show that they are entitled to summary judgment on these counts on three independent grounds. *First*, taped phone conversations show that Defendants accurately conveyed information about HomeBanc's mortgage holdings that HomeBanc itself published in its SEC filings. Nothing about those conversations was misleading. *Second*, the Trustee cannot establish that Sentinel justifiably relied on Defendants' alleged misstatements, because Mr. Mosley was provided with HomeBanc's public SEC filings, which disclosed that HomeBanc originated Alt-A loans, defined how HomeBanc used the terms "Alt-A" and "prime," and described in detail the credit quality of HomeBanc's mortgage portfolio. *See Teamsters Local 282 Pension Trust v. Angelos*, 762 F.2d 522, 529-531 (7th Cir. 1985) (reliance on alleged misstatement not justified where "investor already possesses information sufficient to call the representation into question" and "when [investor] has equal or better access to the information" about the misstatement). *Third*, Plaintiff cannot establish loss causation for his securities fraud claim because there is no evidence that HomeBanc's bankruptcy resulted from its Alt-A mortgage holdings. *See Ray v. Citigroup Global Mkts., Inc.*, 482 F.3d 991, 994-995 (7th Cir. 2007) (affirming summary judgment for

stockbrokers for lack of loss causation where alleged misrepresentation about stock had nothing to do with its decline in value).

3. The Trustee's main theory of recovery is that Defendants defrauded Sentinel by knowingly or recklessly recommending unsuitable securities and misleading Sentinel about the characteristics of PreTSLs that supposedly made them unsuitable. *See, e.g.,* Estate Action, First Am. Compl., Count Three & Count Four. There is no evidence to support these allegations.

- **Recommendations of PreTSLs and Other Securities.** As with any claim under Section 10(b) and Rule 10b-5, unsuitability claims require proof of deception, specifically that "the defendant made material misrepresentations (or, owing a duty to the buyer, failed to disclose material information) relating to the suitability of the securities" and "that the buyer justifiably relied to its detriment on the defendant's fraudulent conduct." *Brown v. E.F. Hutton Grp., Inc.*, 991 F.2d 1020, 1031 (2d Cir. 1993); *accord Louros v. Keicas*, 367 F. Supp. 2d 572, 585 (S.D.N.Y. 2005). Thus, the Trustee must prove that Sentinel justifiably relied on, and was deceived by, material misleading representations or omissions by Defendants about the suitability of the securities purchased from FTN. The Trustee cannot do so. Sentinel signed binding representation letters stating that it was a Qualified Institutional Buyer that met the requirements for purchasing PreTSLs, that it would not rely upon Defendants' representations about PreTSLs and other securities, and that it would

make its own suitability determinations.[3] The risks associated with PreTSLs and the characteristics of PreTSLs that the Trustee alleges made them unsuitable were all repeatedly disclosed to Sentinel in writing. Taped phone conversations with Mr. Mosley, Phillip Bloom and Eric Bloom (Sentinel's Chairman and CEO, respectively) show that Sentinel fully understood that high-yield securities such as PreTSL income notes were not liquid and entailed significant risk. In addition, Sentinel – through Mr. Mosley and in written investment guidelines reviewed by other Sentinel managers – repeatedly advised Defendants that Sentinel had a high-yield portfolio for aggressive investments such as PreTSL income notes and combo notes. As a matter of law, these undisputed facts defeat the Trustee's suitability claim based upon alleged fraudulent recommendations of unsuitable securities. *See* Estate Action, First Am. Compl. ¶¶ 195-196.

- **Ratings on PreTSLs.** The Trustee alleges that Defendants misled Mr. Mosley about the ratings on PreTSLs insofar as those ratings did not correspond to comparable ratings on corporate bonds and certain PreTSL tranches "were not 'investment grade' as that term is commonly used in the investment community." First Am. Compl. ¶¶ 29, 51, 125, 202. But the Trustee is unable to identify any statements by Defendants about PreTSL ratings that were false or misleading. Mr. Mosley has asserted his right not to testify under the Fifth Amendment, and there is no evidence that he

---

[3] *See Rissman v. Rissman*, 213 F.3d 381, 383-384 (7th Cir. 2000) (affirming dismissal of securities fraud claim predicated on plaintiff's reliance on alleged false oral statements that company would never be taken public or be sold, on ground that "a written anti-reliance clause precludes any claim of deceit by prior representations"); *Porter v. Shearson Lehman Bros., Inc.*, 802 F. Supp. 41, 63 (S.D. Tex. 1992) (because plaintiff signed representation that he met suitability standards, plaintiff was "estopped from asserting that he did not meet the suitability standards").

misunderstood the meaning of those ratings. Moreover, the Trustee cannot prove the element of justifiable reliance because (a) Mr. Mosley received PreTSL Offering Circulars that clearly explained the ratings and what they meant, and (b) explanations of those ratings were publicly available from the rating agencies.

- **PreTSL Liquidity.** The Trustee alleges that Defendants deceived Mr. Mosley about PreTSLs being liquid investments. Estate Action, First Am. Compl. ¶ 202. In various recorded conversations and emails in 2006 and 2007, however, Mr. Mosley notes that PreTSLs "trade by appointment," that the market for them is "esoteric," and that they are "very illiquid." The PreTSL Offering Circulars contain clear warnings that there may be no market for the PreTSLs being offered and that the buyer must be prepared to hold them indefinitely. Given these facts, there can be no dispute that Mr. Mosley did not justifiably rely on any supposedly false and misleading statements about PreTSL liquidity.

- **Allegedly False Promises to "Make a Market" in PreTSLs.** The Trustee alleges that Defendants falsely assured Mr. Mosley that FTN would "make a market" in PreTSLs. Estate Action, First Am. Compl. ¶¶ 4, 49-50, 184, 202. This claims fails for two reasons. *First*, there is no evidence that Defendants ever assured Mr. Mosley that FTN would be a PreTSL "market-maker," a technical term in the securities industry that denotes "a firm that stands ready to buy and sell a particular stock on a regular and continuous basis at a publicly quoted price."[4] On the contrary, the Offering Circulars for PreTSLs expressly warned that "[t]here is no market for any of

---

[4] *See* SEC Website, Market Maker, *available at* http://www.sec.gov/answers/mktmaker.htm, visited June 5, 2011.

the Notes being offered hereby and, as a result, a purchaser must be prepared to hold the Notes for an indefinite period of time or until the maturity thereof." *Second*, recorded conversations show that Defendants repeatedly informed Mr. Mosley in 2006 and 2007 that FTN was <u>not</u> willing to purchase all of Sentinel's PreTSLs. In short, there is no evidence that Mr. Mosley expected FTN to repurchase all of Sentinel's PreTSLs, let alone that he justifiably relied on alleged assurances that FTN would do so.

4. In the Estate Action, the Trustee alleges that Defendants bribed Mr. Mosley to purchase PreTSLs and the HomeBanc securities with lavish entertainment and accounting advice that allowed him to book inappropriate gains on PreTSL income note sales to increase his bonus. *See* Estate Action, First Am. Compl., Counts Two & Three. A key element of this claim is the deception of Sentinel about the alleged bribes – or, as the Trustee puts it, that "Sentinel did not consent to and did not know of the benefits being offered to or conferred on Mosley, particularly their extent, nature and frequency." *Id.* ¶ 190.[5] But the Trustee has no evidence to support this allegation.[6] The Blooms have asserted their Fifth Amendment right not to testify, as has Matt Keel, Sentinel's Chief Compliance Officer, and Teresa Arana, Sentinel's CFO. Moreover, Defendants have identified no documents or recorded phone conversations that substantiate the

---

[5] *See Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 573-574 (7th Cir. 2004) (If the plaintiff "knew all along about [its employees'] bribe-taking …. this would exonerate the defendants, all right, because it would mean there had been no fraud in the first place."); *Mantek Div. of NCH Corp. v. Share Corp.*, 780 F.2d 702, 705 n.3 (7th Cir. 1986) ("[T]he essence of commercial bribery is that the seller is <u>secretly</u> giving a bribe to the customer's agent to induce the agent to betray his principal (the customer) by purchasing the seller's product even though it is not in the customer's best interest." (Emphasis added.)).

[6] Indeed, the evidence is overwhelming that Sentinel's management team was well aware of both Mr. Mosley's entertainment practices with brokers and his method of accounting for PreTSL income notes, and thus authorized or ratified that conduct.

- 7 -

bald allegation that Sentinel was ignorant of the "benefits" to Mr. Mosley that the Trustee characterizes as bribes.

5.     In the Customer Action, summary judgment should be granted on the aiding and abetting breach of fiduciary duty claim as well. *See* Customer Action, Second Am. Compl., Counts One & Two. Because Sentinel and Mr. Mosley managed pooled investment portfolios that aggregated the assets of multiple customers, they owed fiduciary duties only to the portfolios, not to the individual Assigning Customers who invested in the portfolios. *See SEC v. Goldstein*, 451 F.3d 873, 881 (D.C. Cir. 2006) ("At best it is counterintuitive to characterize the investors in a hedge fund as the 'clients' of the investment adviser. The adviser owes fiduciary duties only to the fund, not to the fund's investors."). Absent a fiduciary duty to the Assigning Customers that Sentinel and Mr. Mosley breached, Defendants cannot be liable for aiding and abetting. Moreover, to prove aiding and abetting, it is not enough for the plaintiff to show the defendant missed "red flags" that, with the benefit of hindsight, support the conclusion that the primary violator's actions were improper. *See Suarez v. JP Morgan Chase Bank NA*, No. 10-cv-3382, 2011 WL 2149427, at *8 (N.D. Ill. June 1, 2011) (dismissing claim of aiding and abetting breach of fiduciary duty where complaint alleged merely that defendant should have suspected that primary violator was perpetrating fraud on plaintiff). Rather, the plaintiff must prove that the defendant had actual knowledge both that the primary violator was breaching its fiduciary duty – in this case, that Sentinel and Mr. Mosley were purchasing unsuitable securities for the Assigning Customers and failing to properly segregate their assets – and how the defendant's actions substantially assisted that misconduct. *See Premier Capital Mgmt., LLC v. Cohen*, No. 02 C 5368, 2008 WL 4378313, at *6 (N.D. Ill. Mar. 24, 2008) (granting motion for summary judgment on aiding and abetting breach of fiduciary duty claim due to lack of "concrete evidence

of knowing and active involvement"). The Trustee's aiding and abetting theory rests entirely on supposed warning signs that the Trustee contends should have alerted Defendants to the possibility that something was amiss at Sentinel. At the summary judgment stage, that is not sufficient.

6. Lastly, the unjust enrichment claim in the Customer Action cannot stand in the absence of another viable claim. *Martis v. Grinnell Mut. Reins. Co.*, 905 N.E.2d 920, 928 (Ill. Ct. App. 2009) ("Unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery.").

7. Defendants propose the following schedule for summary judgment briefing: (a) Defendants will serve the Trustee with opening papers by June 27, 2011; (b) the Trustee will serve his response papers by July 11, 2011; and (c) Defendants will serve their reply papers by July 18, 2011. After completion of briefing, all papers will be filed with the Court by July 18, 2011. Defendants further request that the Court extend the page limit for Defendants' summary judgment memoranda and the Trustee's responsive memoranda from 15 pages for each case to 25, and that Defendants be allowed to file a reply brief in each case of up to 15 pages. These extensions are warranted by the complex nature of the case and the number of grounds on which Defendants will seek summary judgment.

      WHEREFORE, Defendants respectfully request that the Court enter an order setting the above-proposed briefing and service schedule for Defendants' motions for summary judgment.

Dated: June 16, 2011                      Respectfully submitted,

                                          /s/ Michael B. Slade
                                          Brian D. Sieve, P.C. (ARDC #6199741)
                                          Michael B. Slade (ARDC #6274231)
                                          KIRKLAND & ELLIS LLP
                                          300 North LaSalle Street

Chicago, Illinois 60654
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

Howard M. Shapiro
Patrick J. Carome
Jeannie Rhee
John A. Valentine
WILMER CUTLER PICKERING HALE
 AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Mark D. Griffin
Lori H. Patterson
Kristine L. Roberts
BAKER, DONELSON, BEARMAN, CALDWELL
 & BERKOWITZ, PC
First Tennessee Building
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
Facsimile: (901) 577-0870

*Attorneys for Defendants Stephen M. Folan, Jacques de St. Phalle, FTN Financial Securities Corp., and First Tennessee Bank, N.A.*

William Gibbs Sullivan
Royal B. Martin
Mason N. Floyd
MARTIN, BROWN, SULLIVAN, ROADMAN
& HARTNETT, LTD
135 S. LaSalle St., Ste. 3200
Chicago, IL 60603
Phone: (312) 360-5000
Facsimile: (312) 360-5026

*Attorneys for Stephen M. Folan and Jacques de St. Phalle*

- 10 -

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BRIEFING SCHEDULE** was filed with the Clerk of the Court on June 16, 2011, which will send notification of such filings to the parties registered with the Court's CM/ECF system, including the recipients shown below.

                **Chris C. Gair**
                **Anne Paffrath Ray**
                **Gregory M. Boyle**
                **J. Kevin McCall**
                **Jeffrey Scot Eberhard**
                **Kevin Case**
                **Vincent E. Lazar**
                Jenner & Block LLP
                353 N. Clark Street
                Chicago, IL 60654

                                                /s/ Michael B. Slade